UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE ESTATE OF DEMETRIUS STANLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN JOSE, et al., <br><br> Defendants. | Case No. 22-cv-03000-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT** <br><br> Re: Dkt. No. 10 |

This action arises out of a May 31, 2021 deadly encounter between San Jose police officers and the target of an arrest warrant they were surveilling. Plaintiff Mimi Lebreton sues for herself and on behalf of the estate of her son, decedent Demetrius Stanley, asserting civil rights violations pursuant to 42 U.S.C. § 1983, as well as several state law claims for relief. The defendants are the City of San Jose ("City") and Officers Anthony Baza and Hans Jorgenson.

Defendants now move pursuant to Rule 12(b)(6) to dismiss all claims for relief. In addition, defendants move to dismiss the claims against Officer Baza on the ground that he is entitled to qualified immunity. Plaintiffs oppose the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants defendants' motion to dismiss in part and denies it in part.[1]

I.   **BACKGROUND**

The following background facts are based on the allegations of the complaint, which for

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 14, 16.

present purposes, are deemed true.

On the evening of May 31, 2021, Mr. Stanley was at home and noticed a man peering into the window of his niece's car parked outside his house. Dkt. No. 1 ¶ 16. Concerned that the man was attempting to break into or vandalize his niece's car, Mr. Stanley went outside to investigate, armed with a handgun. *Id*. ¶¶ 16, 22. According to the complaint, Mr. Stanley did not know that the man peering into his niece's car was in fact San Jose police officer Hans Jorgenson. *Id*. ¶¶ 17-18. Officer Jorgensen was working undercover with Officer Anthony Baza, surveilling Mr. Stanley's home in order to arrest Mr. Stanley on an outstanding warrant. *Id*. ¶¶ 18, 25. Neither Officer Jorgenson nor Officer Baza was dressed in traditional police uniform. *Id*. ¶ 18.

When Mr. Stanley walked outside, Officer Jorgenson did not identify himself as a police officer. *Id*. ¶ 19. Instead, Officer Jorgenson allegedly "sprint[ed] away from Mr. Stanley as if he was caught in the act of some sort of illegal activity." *Id*. Mr. Stanley did not chase Officer Jorgenson, but made sure that Officer Jorgenson had left the area and then began to walk back to his house. *Id*. ¶ 20.

As he walked toward his home, Mr. Stanley passed the vehicle in which Officer Baza was sitting, with the engine running. *Id*. The vehicle was not marked as a police vehicle and had heavily tinted rear and side windows. *Id*. The complaint alleges that Mr. Stanley did not know that the vehicle "was a police vehicle and not part of what appeared to be ongoing criminal activity outside of his family's home that had targeted his niece's car and perhaps his or a neighbor's home." *Id*. ¶ 21.

Mr. Stanley withdrew his handgun from his waistband and walked back toward Officer Baza's vehicle. *Id*. ¶ 22. "Seeing someone sitting suspiciously inside the idling vehicle, Mr. Stanley opened the driver's side door." *Id*. "It was only then that he saw [Officer] Baza . . . sitting in the driver's seat with the barrel of his AR-15 rifle pointed at Mr. Stanley." *Id*.

According to the complaint, Mr. Stanley "jumped back from the vehicle," and "did not fire his gun or do anything else other than retreat." *Id*. ¶ 23. The complaint further alleges that Officer Baza yelled, "get the fuck out of here, police," and "simultaneously [shot] Mr. Stanley at point blank range." *Id*. Officer Baza fired four shots, hitting Mr. Stanley twice in the chest. *Id*. ¶ 24.

Mr. Stanley lost consciousness and was later pronounced dead at the scene. *Id.*

The complaint asserts five claims for relief, four of which are brought on behalf of Mr. Stanley's estate. The complaint asserts claims on Mr. Stanley's behalf against Officer Baza for excessive force in violation of the Fourth Amendment, 42 U.S.C. § 1983 (claim 1); against the City and Officer Baza for violation of the California Bane Act, Cal. Civ. Code § 52.1 (claim 3); against the City and Officer Baza for battery (claim 4); and against all defendants for negligence and wrongful death (claim 5). Ms. Lebreton asserts a Fourteenth Amendment claim against Officer Baza for familial loss, 42 U.S.C. § 1983 (claim 2).

Defendants now move pursuant to Rule 12(b)(6) to dismiss all claims for relief. They contend that, as a matter of law, Officer Baza's use of deadly force was reasonable under the circumstances and that he is entitled to qualified immunity. Defendants further contend that Officer Jorgenson should be dismissed because he was not involved in the shooting and there are no facts alleging that he did anything wrong. Defendants argue that the complaint otherwise fails to state sufficient facts to support any plausible claims for relief.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

**III. DISCUSSION**

**A. Fourth Amendment Claim—Excessive Force**

This claim, asserted on behalf of Mr. Stanley's estate against Officer Baza, is brought pursuant to 42 U.S.C. § 1983 and alleges that Officer Baza's use of deadly force violated Mr. Stanley's right under the Fourth Amendment to "be secure in his person against unreasonable and excessive force[.]" Dkt. No. 1 ¶¶ 30-33. In the first two portions of defendants' motion to dismiss, defendants essentially argue the two parts of the qualified immunity analysis. First, they contend that the excessive force claim fails because Officer Baza's use of deadly force was objectively reasonable, as a matter of law. Second, defendants argue that Mr. Stanley did not have a clearly established constitutional right to be free from the use of deadly force under the circumstances presented.

"'The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (establishing the two-part test). In determining whether an officer is entitled to qualified immunity, courts consider "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the

4

officer's alleged misconduct." *Estate of Lopez*, 871 F.3d at 1005 (internal quotations and citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

### 1. Violation of a constitutional right

"[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) ("All claims that law enforcement officers have used excessive force—deadly or otherwise—in the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness' standard."). "An officer's use of *deadly* force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) (quoting *Garner*, 471 U.S. at 3).

"As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotations and citation omitted); *see also Garner*, 471 U.S. at 8 ("We have described the balancing of competing interests as the key principle of the Fourth Amendment.") (internal quotations and citation omitted). Proper application of the Fourth Amendment's test of reasonableness thus "requires careful attention to the facts and circumstances of each particular case," *Graham*, 470 U.S. at 396, and "involves a totality of the circumstances inquiry," *Johnson v. City of San Jose*, — F. Supp. 3d — No. 21-cv-01849-BLF, 2022 WL 799424, at *5 (N.D. Cal. Mar. 16, 2022). Because the excessive force inquiry nearly always turns on disputed factual contentions and the inferences to be drawn, the Ninth Circuit has "held on many occasions that . . .

judgment as a matter of law in excessive force cases should be granted sparingly." *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011).

Under *Graham*, courts consider governmental interests at stake such as (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *Estate of Lopez*, 871 F.3d at 1005 (internal quotations and citation omitted). However, the *Graham* factors are non-exhaustive, and "[c]ourts still must examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Id*. at 1006 (internal quotations and citation omitted). For example, "courts also consider the plaintiff's interests by looking to the 'type and amount of force inflicted' and 'the severity of injuries' experienced by the plaintiff," *Johnson*, — F. Supp. 3d —, 2022 WL 799424, at *5 (citing *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir 2018)), as well as other factors including whether officers gave a warning, assuming it was practicable, *see Garner*, 471 U.S. at 11-12; *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Thus, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396; *see also Glenn*, 673 F.3d at 871 (same).

In the present case, it is undisputed that Officer Baza used the highest level of force against Mr. Stanley, with fatal consequences. Defendants contend that the severity of the crime and the immediate threat posed by Mr. Stanley support the reasonableness of the use of force, and there can be no Fourth Amendment violation as a matter of law. Here, defendants emphasize that, as alleged in the complaint, Officer Baza merely sat in his vehicle and did nothing to escalate matters. *See* Dkt. No. 1 ¶¶ 20, 22. Defendants contend that it was Mr. Stanley who created a

dangerous situation by walking around on the street with a gun. They further note that while Mr. Stanley initially walked away to return home after Officer Jorgenson left, Mr. Stanley then changed course, withdrew his handgun, walked back toward Officer Baza's vehicle, and opened the driver's side door. *Id*. In sum, defendants contend that Mr. Stanley was the aggressor, who posed an immediate threat to the safety of Officer Baza and others, and forced Officer Baza to defend himself. Plaintiffs maintain that Mr. Stanley was merely trying to protect his family and their property against what he perceived to be potential criminal activity.

      The fact that Mr. Stanley was armed unquestionably is an important consideration. However, it is not dispositive of the Fourth Amendment reasonableness analysis; "otherwise, that a person was armed would always end the inquiry." *Glenn*, 673 F.3d at 872. Officers Jorgenson and Baza were at Mr. Stanley's home to arrest him on an outstanding warrant. As alleged in the complaint, it was Mr. Stanley who confronted Officer Baza with a gun (not the other way around) in apparent close proximity while Officer Baza sat in his vehicle. There are no facts alleged in the complaint suggesting that a reasonable officer on the scene might have known that Mr. Stanley was acting in self-defense. The complaint's allegations also indicate that when Mr. Stanley opened the door of Officer Baza's vehicle, Officer Baza already had "the barrel of his AR-15 rifle pointed at Mr. Stanley." Dkt. No. 1 ¶ 22. Caselaw indicates that other factors are also highly relevant, including whether Officer Baza observed Mr. Stanley approaching his vehicle, whether Mr. Stanley was pointing his gun at Officer Baza at the time of the shooting, and whether Officer Baza had time to identify himself as a police officer and obtain Mr. Stanley's compliance by other means.[2] *See Estate of Lopez*, 871 F.3d at 1008 (affirming denial of summary judgment on qualified immunity where the evidence, viewed in the light most favorable to plaintiffs, indicated that at the time of the shooting, the barrel of what was perceived to be a real gun could only have

---

[2] Defendants correctly note that the Supreme Court has rejected the so-called provocation rule, "which holds that an officer's otherwise reasonable (and lawful) defensive use of force is unreasonable as a matter of law, if (1) the officer intentionally or recklessly provoked a violent response, and (2) that provocation is an independent constitutional violation." *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546-48 (2017). However, the Court is unpersuaded by defendants' generalized argument that "[o]fficers' [a]ctions [l]eading [u]p to the [u]se of [f]orce [a]re [n]ot [r]relevant to [t]he [r]easonableness [a]nalysis [u]nder *Graham*." Dkt. No. 21 at 5.

7

been raised to a level that did not pose a threat to officers); *Scott*, 39 F.3d at 914 (suggesting that the use of deadly force is reasonable where a suspect points a gun at officers); *Estate of Risher v. City of Los Angeles*, No. EDCV 17-995-MWF (KKx), 2020 WL 5377306, at *12 (C.D. Cal. July 29, 2020) (stating that "if a factfinder determines that [the decedent] was pointing his gun at [the officer] prior to the final volley of shots, [the officer]'s use of force was reasonable. However, at this stage, construing all inferences in Plaintiffs' favor, the Court cannot determine that [the decedent] was pointing his gun at [the officer] as a matter of law when [the officer] shot off his final volley.").[3]

"This is not to say that the Fourth Amendment always requires officers to delay their fire until a suspect turns his weapon on them." *George*, 736 F.3d at 838. "If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Id*. Under the circumstances as alleged in the complaint, however, the position of Mr. Stanley's gun at the time of the shooting appears to be highly material, as it may also inform the reasonableness or not of Officer Baza's alleged simultaneous verbal response identifying himself as a police officer and shooting of Mr. Stanley, reportedly giving Mr. Stanley little or no time to do anything but "jump[] back" and retreat from Officer Baza's vehicle. Dkt. No. 1 ¶ 23. While the Court is mindful that "qualified immunity is to be determined at the earliest possible point in the litigation," *Estate of Lopez*, 871 F.3d at 1021, the fact remains that the complaint is silent regarding the position of Mr. Stanley's gun and other salient facts described above, and the record is not sufficiently developed for the Court to conduct a proper Fourth Amendment reasonableness analysis or to conclude that Officer's Baza's actions were reasonable as a matter of law. At this stage of the proceeding, the immediacy of any threat posed by Mr. Stanley and Officer Baza's objective reasonableness in the totality of the circumstances depends on facts as alleged in the complaint that must be viewed in plaintiffs' favor. The Court cannot say that the complaint fails to state sufficient facts supporting a plausible

---

[3] Defendants' assertion that Mr. Stanley "opened the [car] door with the gun pointing at Officer Baza" (Dkt. No. 21 at 2), is not supported by any citation to the complaint, and the complaint contains no such allegation. The facts that are alleged do not necessarily compel the conclusion that Mr. Stanley was pointing his gun at Officer Baza at the time of the shooting.

Fourth Amendment violation based on excessive force.

### 2. Clearly established right

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551 (2017)). While the law "'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White*, 137 S. Ct. at 551). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *White*, 137 S. Ct. at 551).

"The "clearly established" prong of the qualified immunity analysis is a matter of law to be decided by the Court, once factual issues are resolved. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2017). This "bifurcation of duties is unavoidable: only the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved." *Id.* (internal quotations and citation omitted). Additionally, the Supreme Court has repeatedly emphasized that "the clearly established right must be defined with specificity" and clearly established law cannot be defined "at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). "[S]pecificity is especially important in the Fourth Amendment context," and "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1152-53 (internal quotations and citations omitted).

Defendants argue that it is "axiomatic that if an officer is suddenly attacked by a suspect brandishing a loaded gun, the officer can respond with deadly force," stating that "there was no time to deliberate," "no time for a warning," and that Mr. Stanley "suddenly opened Officer Baza's door and pointed a gun at him." Dkt. No. 21 at 6-7. At this stage of the proceedings, however, the Court must focus on the facts as alleged in the complaint. *See Navarro*, 250 F.3d at 732. As noted above, nowhere does the complaint allege that Mr. Stanley pointed his gun at

9

Officer Baza. Moreover, defendants' narrative assumes facts regarding Mr. Stanley's purported "sudden," "unexpected," and "aggressive" conduct. *See generally* Dkt. Nos. 10, 21. But such allegations do not appear in the complaint, and it is not clear that the facts that are alleged must be so construed.

Based on the facts as alleged in the complaint, the question presented is whether the law was clearly established such that an officer on May 31, 2021, would have known that the use of deadly force was unreasonable where the target of an arrest warrant, who is being surveilled by undercover officers, exits his home armed with a handgun, withdraws the gun from his waistband, approaches the vehicle in which an officer is sitting in the driver's seat, opens the driver's side door, and does nothing but "jump[] back from the vehicle" and retreat while the officer simultaneously identifies himself as a police officer and shoots the target at point blank range. *See* Dkt. No. 1 ¶ 23.

Neither side has cited a case that is on point with these facts,[4] although plaintiffs cite to several that they feel are relevant to this portion of the qualified immunity analysis, including *Estate of Lopez* and *Estate of Risher*, as well as *Nunez v. City of San Jose*, 381 F. Supp. 3d 1192 (N.D. 2019) and *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014). *See* Dkt. No. 17 at 11. Defendants argue that these cases are all distinguishable because in each one, "the officers had time to provide warnings, the officers had time to deliberate, and the officers confronted the suspects," whereas defendants maintain that none of those factors were present in the May 31, 2021 encounter with Mr. Stanley. Dkt. No. 21 at 7. As discussed, defendants' arguments appear to be based on at least some assertions that do not appear in the complaint. Additionally, it was suggested at the motion hearing that there is other evidence, including video,[5] that is not part of the current record, but which may shed light on the incident.

For the same reasons discussed above, the question of whether Officer Baza violated a

---

[4] In their briefing, defendants direct the Court to decisions by the Fourth and Sixth Circuits. *See* Dkt. No. 10 at 7-8. As discussed at the motion hearing, however, in resolving the present motion the Court looks to binding precedent from the U.S. Supreme Court and the Ninth Circuit.

[5] Defendants stated that there is no body-worn camera footage of the incident, but that there is video from a home security system.

10

right that was clearly established at the time of his encounter with Mr. Stanley depends on factual matters, including the position of Mr. Stanley's gun at the time of the shooting and what Officer Baza may have observed and did prior to the shooting, that are not presently before the Court. Taking the facts as alleged in the complaint, it is not clear that Mr. Stanley posed an immediate threat to Officer Baza. While the law does not require a case identical to the present action for a right to be clearly established, there is precedent giving fair notice of the general principle "that the use of deadly force is unreasonable where the victim does not directly threaten the officer with the gun." *Estate of Lopez*, 871 F.3d at 1020-21; *see also Longoria v. Pinal Cty.*, 873 F.3d 699, 708-09, 710 (9th Cir. 2017) (concluding that material fact issues precluded summary judgment re qualified immunity, but noting that officer's use of deadly force could have violated a clearly established right if jury determined that plaintiff had not brandished a weapon and was in the process of surrendering at the time of the shooting, rather than assuming a shooting stance).

Accordingly, the Court cannot at this stage of the proceedings properly determine whether Officer Baza is entitled to qualified immunity. Defendants' motion to dismiss the Fourth Amendment claim based on excessive force therefore is denied. The denial is without prejudice to defendants to bring a subsequent motion renewing the qualified immunity defense. However, the filing of any subsequent motion concerning the qualified immunity defense is subject to sufficient factual development of the record.

### B.   Fourteenth Amendment Claim

Ms. Lebreton's § 1983 claim is asserted against Officer Baza and alleges that, as a result of his excessive force, Mr. Stanley died, depriving Ms. Lebreton of her constitutional right under the Fourteenth Amendment to a familial relationship with Mr. Stanley. Dkt. No. 1 ¶¶ 34-38. Defendants move to dismiss this claim on the ground that the complaint fails to allege facts demonstrating that Officer Baza's use of force was so excessive that it "shocks the conscience."

The Ninth Circuit "recognize[s] that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Id*. "In determining whether excessive force shocks the

conscience, the court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'" *Id.* (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id.* (citing *Porter*, 546 F.3d at 1137). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* (citing *Porter*, 546 F.3d at 1140); *see also Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (same).

Defendants argue that Officer Baza's use of force was a snap judgment made when Mr. Stanley, carrying a gun, unexpectedly opened the driver's side door of Officer Baza's vehicle. Plaintiffs maintain that allegations that Officer Baza shot Mr. Stanley while Mr. Stanley was retreating, demonstrate that the shooting shocks the conscience. For the same reasons discussed above, other relevant and highly material facts not presently before the Court may inform the inquiry whether deliberation under the circumstances was practical. On the record presented, viewing the allegations of the complaint and construing all inferences in plaintiffs' favor, the Court cannot say that the complaint fails to state sufficient facts supporting a plausible Fourteenth Amendment claim for loss of familial association. Defendants' motion to dismiss this claim is denied.

### C. California Bane Act Claim

The complaint asserts a claim on behalf of Mr. Stanley's estate against the City and Officer Baza for violation of California's Bane Act based on the use of allegedly unlawful deadly force. Dkt. No. 1 ¶¶ 39-46. Defendants move to dismiss this claim, arguing that "[p]laintiffs may not assert a Bane Act claim on their own behalf, as they purport to do." Dkt. No. 10 at 10. Defendants also contend that the complaint fails to allege facts that Officer Baza acted with the requisite intent to violate Mr. Stanley's Fourth Amendment rights.[6]

---

[6] Defendants also argue that the Bane Act claim necessarily fails along with Mr. Stanley's Fourth Amendment claim. As discussed above, however, the Court cannot conclude on the present record that Mr. Stanley's Fourth Amendment claim fails as a matter of law.

1  The Bane Act provides that a person may bring a civil action "in their own name and on their own behalf" against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment" of any federal or California constitutional right. Cal. Civ. Code § 52.1(c). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." *Reese*, 888 F.3d at 1040-41 (citing *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1246 (2007)).

To the extent defendants contend that a Bane Act claim cannot properly be brought on behalf of Mr. Stanley's estate, they have not carried their burden of demonstrating that the assertion of such a claim is improper. As noted above, the complaint in the present case asserts the Bane Act claim *only* on behalf of Mr. Stanley's estate, and not anyone else. Defendants misplace their reliance on *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189 (E.D. Cal. 2019) and *Bay Area Rapid Transit Dist. v. Super. Ct.* ("*BART*") 38 Cal. App. 4th 141 (1995). Both cases concerned the assertion of Bane Act claims by family members and persons *other* than the decedent's estate, *for themselves* based on a claimed violation of *their own* rights. Indeed, the defendants in *Estate of Mendez* did not challenge the assertion of a Bane Act claim on behalf of the decedent's estate, arguing that relief under that statute "may be granted and can only be brought on behalf of [the decedent]'s estate." *Estate of Mendez*, 390 F. Supp. 3d at 1199. And as explained by one court in this district, "many courts" have rejected the argument that *BART* "means that parents may never bring a Bane Act claim on behalf of a decedent." *Banks v. Mortimer*, — F. Supp. 3d —, No. 18-cv-07391-HSG, 2022 WL 3216401, at *21-22 (N.D. Cal. Aug. 9, 2022). At the motion hearing, defendants were unable to direct the Court to any other authority in support of their position. Defendants' motion to dismiss the Bane Act claim on this basis is denied.

Defendants maintain that the complaint fails to allege sufficient facts supporting the specific intent required to state a claim under the Bane Act. The Bane Act "does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese*, 888 F.3d at 1043 (citing *Cornell v. City & Cty. of San*

13

*Francisco*, 17 Cal. App. 5th 766, 799-800 (2017)). Thus, "'the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1.'" *Id*. (quoting *Cornell*, 17 Cal. App. 5th at 799). However, claims under § 1983 and the Bane Act are not coextensive. *See id.* The Bane Act imposes an additional requirement beyond a constitutional violation, namely "'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Id*. (quoting *Cornell*, 17 Cal. App. 5th at 801). The mere intent to use force that a jury ultimately finds unreasonable is not sufficient to satisfy the specific intent requirement. To prevail on a Bane Act claim, a plaintiff must establish that "the defendants intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id*. at 1045 (internal quotations and citation omitted).

The specific intent inquiry focuses on two questions: (1) "'[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,'" and (2) "'[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803). If these two requirements are met, then "specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." *Id*. (quoting *Cornell*, 17 Cal. App. 5th at 803); *Johnson*, — F. Supp. 3d —, 2022 WL 799424 at *12 ("A Bane Act claim requires a showing of specific intent to violate protected rights, which can be satisfied by '[r]eckless disregard of the 'right at issue.'") (quoting *Cornell*, 17 Cal. App. 5th at 803, 804).

As discussed above, the parties dispute whether Officer Baza's use of force was reasonable under the circumstances. For present purposes, viewing the complaint's allegations in the light most favorable to plaintiffs, the Court concludes that allegations indicating that Officer Baza shot Mr. Stanley while Mr. Stanley was retreating from Officer Baza's vehicle, are sufficient at the pleading stage to state a plausible claim for violation of the Bane Act based on a clearly delineated right and reckless disregard of that right. *See Johnson*, — F. Supp. 3d —, 2022 WL 799424 at *12 (denying motion to dismiss Bane Act claim where the complaint alleged that the officer fired

14

a foam baton at plaintiff, even though the plaintiff protester was running away and no unlawful assembly had been declared). Defendants' motion to dismiss this claim is denied.

### D. Battery Claim

The complaint asserts a claim, on behalf of Mr. Stanley's estate, against the City and Officer Baza for battery. Dkt. No. 1 ¶¶ 47-51. The parties agree that the success of this claim depends on whether Officer Baza use of force was unreasonable. *See* Dkt. No. 10 at 11; Dkt. No. 17 at 15. Defendants argue that the battery claim must fail along with Mr. Stanley's Fourth Amendment claim. As discussed above, however, defendants' motion to dismiss the Fourth Amendment claim is denied. Accordingly, their motion to dismiss the battery claim is also denied.

### E. Negligence/Wrongful Death Claim

The complaint asserts a claim, on behalf of Mr. Stanley's estate, against all defendants for negligence and wrongful death. Dkt. No. 1 ¶¶ 52-58. Defendants argue that this claim is insufficiently pled as to what duty the officers owed to Mr. Stanley and how any such duty was breached.

"Under California law, public employees 'are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons.'" *Nunez v. City of San Jose*, 381 F. Supp. 3d 1192, 1215 (N.D. Cal. 2019) (quoting *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 628-29 (2013)). "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes*, 57 Cal. 4th at 629 (internal quotations and citation omitted).

"In California, police officers 'have a duty to act reasonably when using deadly force.'" *Nunez*, 381 F. Supp. 3d at 1215 (quoting *Vos v. City of Newport Beach*, 892 F.3d 1024, 1037 (9th Cir. 2018)); *see also Hayes*, 57 Cal. 4th at 629 ("This court has long recognized that peace officers have a duty to act reasonably when using deadly force."). While negligent wrongful death claims are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims, *Hayes,* 736 F.3d at 1232, "state negligence law, which considers the totality of the

15

1  circumstances surround any use of deadly force, is broader that federal Fourth Amendment law,
2  which tends to focus more narrowly on the moment when deadline force is used." *Hayes,* 57 Cal.
3  4th at 639 (internal citations omitted).  In particular, "[l]aw enforcement personnel's tactical
4  conduct and decisions preceding the use of deadly force are relevant considerations under
5  California law in determining whether the use of deadly force gives rise to negligence liability."
6  *Id.*

7  "[W]here the preshooting conduct did not cause the plaintiff any injury independent of the
8  injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should
9  not be considered in isolation." *Id*. at 632.  "Rather, it should be considered in relation to the
10 question whether the officers' ultimate use of deadly force was reasonable." *Id.*  If "an officer's
11 conduct falls within the range of conduct that is reasonable under the circumstances, there is no
12 requirement that he or she choose the most reasonable action or the conduct that is the least likely
13 to cause harm and at the same time the most likely to result in the successful apprehension of a
14 violent suspect, in order to avoid liability for negligence." *Id*. (internal quotations and citation
15 omitted).  For the reasons discussed above, viewing the complaint's allegations in plaintiffs' favor,
16 plaintiffs have pled sufficient facts that Officer Baza's use of deadly force was excessive, which
17 constitutes a breach of the duty articulated in *Hayes*.  Accordingly, defendants' motion to dismiss
18 the negligence/wrongful death claim against Officer Baza is denied.

19 With respect to Officer Jorgenson, however, plaintiffs have not pled sufficient facts to
20 support a negligence theory.  There are no allegations that Officer Jorgenson was involved in the
21 shooting.  As alleged in the complaint, Mr. Stanley observed Officer Jorgenson looking in his
22 niece's car; and when approached by Mr. Stanley, Officer Jorgenson left the scene without
23 identifying himself as a police officer.  Plaintiffs contend that Officer Jorgenson may be held
24 liable for negligence because he worked with Officer Baza in planning the surveillance of Mr.
25 Stanley, and should not have conducted any activities in the open where Mr. Stanley could easily
26 observe them from his home.  Plaintiffs also contend that, rather than removing himself from the
27 scene when confronted by Mr. Stanley, Officer Jorgenson should have instead identified himself
28 to Mr. Stanley as a police officer.  *See* Dkt. No. 17 at 16.  However, Officer Jorgenson did not

have a duty to adopt what, in hindsight, might appear to be the most reasonable course of action. *Hayes*, 57 Cal. 4th at 632. Considering the totality of the circumstances preceding the use of deadly force, plaintiffs have not alleged sufficient facts connecting Officer Jorgenson's conduct to the ultimate use of deadly force *by Officer Baza*. Nor have they identified any additional facts that might be pled to address that deficiency. Accordingly, defendants' motion to dismiss the negligence claim against Officer Jorgenson is granted, without leave to amend.

## IV. CONCLUSION

Based on the foregoing, defendants' motion to dismiss the complaint is granted in part and denied in part. The negligence/wrongful death claim against Officer Jorgenson is dismissed without leave to amend. Defendants' motion to dismiss is otherwise denied in all other respects.

**IT IS SO ORDERED.**

Dated: November 9, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

17