UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE ESTATE OF DEMETRIUS STANLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN JOSE, et al., <br><br> Defendants. | Case No. 22-cv-03000-VKD <br><br> **ORDER RE MOTIONS IN LIMINE** <br> Re: Dkt. Nos. 50, 51 |

The Court held a pretrial conference in this matter on January 17, 2024. Dkt. No. 56. This order resolves the parties' motions in limine. Dkt. Nos. 50, 51. The Court will issue separate orders regarding the parties' proposed jury instructions (Dkt. No. 55-8) and other matters discussed during the pretrial conference.

## I.  PLAINTIFFS' MOTION IN LIMINE NO. 1

Plaintiffs move to exclude matters that officers were unaware of at the time of the shooting. Specifically, they move to exclude: (1) any reports and testimony by San Jose Detective Amanda Estantino regarding a March 2021 armed robbery, which was the basis for the outstanding warrant for Mr. Stanley's arrest and the May 31, 2021 reconnaissance by the San Jose Police Department ("SJPD"); (2) the Santa Clara County District Attorney's post-incident report; and (3) toxicology results referenced in the Santa Clara County Medical Examiner's autopsy report.

### A.  Reports and Testimony of Detective Estantino

Plaintiffs contend that any reports or testimony by Detective Estantino regarding the March 2021 armed robbery are irrelevant because Officer Baza received all information about that

1   incident from other officers—namely, Officers Lopez and Jorgensen. Plaintiffs also contend that
2   this evidence is unfairly prejudicial, confusing, and a waste of time. *See* Fed. R. Evid. 403.
3   Defendants respond that Detective Estantino's testimony and reports are necessary to "lay[] the
4   foundation for the SJPD pursuing arrest and search warrants against [Mr.] Stanley," "what Officer
5   Baza knew the night of the surveillance," or the reason why SJPD's Covert Response Unit
6   ("CRU") conducted the May 31, 2021 reconnaissance. *See* Dkt. No. 53 at 2-3.

7   Plaintiffs' motion to exclude Detective Estantino's testimony and reports is granted with
8   respect to the trial on liability issues.[1] The parties agree that Officer Baza "was conducting
9   reconnaissance at an address where [Mr.] Stanley was believed to be living in preparation for the
10  execution of an arrest warrant the following day," and that the "warrant authorized [Mr.] Stanley's
11  arrest for robbery, assault with a deadly weapon, and unlawful possession of a firearm after
12  Stanley was identified as the suspect in a March 12, 2021 incident." Dkt. No. 55 at 3. No
13  foundation of the type defendants describe is relevant here. There is no evidence that prior to the
14  May 31, 2021 shooting, Officer Baza spoke with Detective Estantino or read her report(s)
15  regarding the March 2021 armed robbery. *See Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 632
16  (2013) ("[A]s the nation's high court has observed, '[t]he 'reasonableness' of a particular use of
17  force must be judged from the perspective of a reasonable officer on the scene, rather than with the
18  20/20 vision of hindsight.'") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). With
19  respect to liability issues, any probative value of Detective Estantino's testimony or report
20  therefore is outweighed by a danger of confusing the issues, misleading the jury, undue delay, and
21  waste of time. Fed. R. Evid. 403. If plaintiffs argue or present evidence challenging whether
22  Officer Lopez properly or thoroughly vetted and prepared the CRU operational plan, the Court
23  will consider whether Detective Estantino's evidence is admissible to counter plaintiffs'
24  presentation.

25  Based on the discussion at the pretrial conference, the Court understands that defendants
26  also wish to present testimony and evidence from Detective Estantino to rebut plaintiffs' claimed

---

[1] As discussed in the Court's separate Pretrial Order No. 1, trial will be bifurcated regarding issues of liability and damages.

damages. Detective Estantino is expected to testify that during her interview of Mr. Stanley, he confessed to committing the March 2021 robbery. Thus, defendants contend that her testimony is relevant to show that Mr. Stanley "was likely to be convicted of the armed robbery and other charges" and "would not be providing financial assistance or regular affection, companionship, etc. to [Ms.] Lebreton" while incarcerated. *Id*. at 2. Further, defendants argue that "as a convicted felon with prior arrests, [Mr.] Stanley would have fewer and less lucrative employment opportunities once released from prison, which would also affect the damages calculation." *Id*. The Court reserves judgment on the admissibility of such evidence, depending on the nature and scope of evidence presented by plaintiffs regarding their claimed damages.

### B.     Santa Clara County District Attorney's Report

Plaintiffs move to exclude the Santa Clara District Attorney's post-incident report in which the District Attorney concluded that Officer Baza's use of deadly force was necessary for self-defense and reasonable under the circumstances. Plaintiffs argue that the report is irrelevant. Defendants represent that they do not intend to offer the District Attorney's report at trial for any purpose, except for impeachment. Dkt. No. 53 at 3. Accordingly, plaintiffs' motion to exclude the District Attorney's post-incident report is granted, subject to the use of such evidence for impeachment.

### C.     Santa Clara County Medical Examiner's Toxicology Results

Plaintiffs move for an order precluding defendants from presenting toxicology results referenced in the Santa Clara County Medical Examiner's autopsy report. That autopsy report, which defendants propose to enter into evidence,[2] indicates that Mr. Stanley's blood alcohol level was 0.163 g%, and that "Delta 9 THC (tetrahydrocannabinol) and metabolic, carboxy THC" and "MDA and MDMA (Ecstasy)" were also detected, although the levels of THC and MDA/MDMA are not reported. *See* Dkt. No. 50-4. Plaintiffs argue that the toxicology results should be

---

[2] As discussed in the Court's separate Pretrial Order No. 1, it is the Court's understanding that, with respect to liability issues, defendants intend to present the autopsy report (and Dr. Jorden's testimony) solely on the toxicology results referenced in the autopsy report.

3

excluded because defendants did not disclose the underlying toxicology report in discovery[3] and did not identify any expert to testify about the toxicology results referenced in the autopsy report. Defendants argue that the toxicology report corroborates Officer Baza's observations that Mr. Stanley's actions and behavior on the night in question were aggressive, unpredictable, and unusual. Additionally, defendants contend that the report is relevant to show Mr. Stanley's comparative negligence, and is also relevant to the jury's assessment of plaintiffs' claimed damages.

Evidence of alcohol or drug use would be relevant if defendants can establish a connection between the alcohol or drugs detected in Mr. Stanley's system and his behavior on the night in question. *See Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009) (affirming admission of evidence of drug use as probative of alleged erratic behavior); *but see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) ("[W]e can only consider the circumstances of which [officers] were aware when they employed deadly force. . . . [W]hen analyzing the objective reasonableness of the officers' conduct under *Graham*, we cannot consider the fact that [the decedent] was intoxicated or that he had previously used a knife in harming himself.") (internal citations omitted); *Hayes*, 57 Cal.4th at 632 ("[A]s the nation's high court has observed, '[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'") (quoting *Graham*, 490 U.S. at 396). Defendants have offered no evidence establishing a connection between the alcohol or drugs detected and Mr. Stanley's behavior on the night in question. Nor do they have any evidence regarding when the alcohol or drugs were ingested and what effect they would have on Mr. Stanley at the time of the incident. Rather, defendants suggest that the jury should be permitted to speculate that Mr. Stanley's behavior was impacted by alcohol or drug use based merely on the detection of such substances in his body. The Court is not persuaded that a

---

[3] Plaintiffs note that to the extent Courtney Triggs, an SJPD forensic analyst on defendants' proposed witness list, is the toxicologist who performed the toxicology tests, they contend that Ms. Triggs was not disclosed in defendants' Rule 26(a) disclosures. Dkt. No. 50 at 5 n.1. However, plaintiffs state no objection to Ms. Triggs being called as a witness to testify about "the collection and processing of the neighborhood security videos." *See* Dkt. No. 55-2.

1  lay jury may reasonably so conclude without the benefit of additional evidence regarding the
2  significance of the detection of alcohol and drugs in Mr. Stanley's system. Accordingly,
3  plaintiffs' motion to exclude the toxicology results and any references to those results in the
4  autopsy report is granted. However, the Court reserves judgment regarding whether defendants
5  may present the autopsy report for some other purpose.

## II.  DEFENDANTS' MOTIONS IN LIMINE

### A.  Motion in Limine No. 1 to Exclude Testimony of Roger Clark

Defendants move to exclude the testimony of plaintiffs' retained police practices expert, Roger Clark, on the grounds that the opinions offered by Mr. Clark are speculative and constitute legal conclusions that invade the fact-finding role of the jury. Additionally, defendants argue that Mr. Clark should not be permitted to offer opinions based on the alleged flawed formulation or execution of the CRU operational plan.

Preliminarily, the Court's August 23, 2022 case management order set an October 31, 2023 deadline for a hearing on dispositive and *Daubert*[4] motions. Dkt. No. 19. Because defendants' motion to exclude Mr. Clark's testimony challenges his qualifications and the reliability of his opinions, defendants should have filed their motion no later than September 26, 2023. *See* Civil L.R. 7-2(a). This is not the first time that the City Attorney's Office has not complied with this Court's dispositive/*Daubert* motion deadline, and has filed a tardy motion to exclude an expert's testimony, as a motion in limine, months after the filing deadline. *See Berry v. Parodi*, Case No. 5:21-cv-08436-VKD, Dkt. Nos. 23, 65, 72 at 1 n.3. The Court would otherwise strike the defendants' motion as untimely, but is compelled to consider their belated submission given the Court's "basic gatekeeping obligation" to "'ensure that any and all scientific testimony . . . is not only relevant, but reliable,'" particularly in view of the fact that plaintiffs intend to present expert testimony to a jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). If the City Attorney's Office continues to disregard the Court's ordered dispositive/*Daubert* motion deadline in future cases, the Court will consider

---

[4] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

whether sanctions are appropriate. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (internal quotations and citation omitted).

A witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony "demonstrates that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 recently was amended, effective December 1, 2023, "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

*First*, defendants move to exclude Mr. Clark's opinions regarding what Officer Baza should have done, based on what defendants characterize as unsupported assumptions about Mr. Stanley's state of mind, including that Officer Baza "should have known that Mr. Stanley likely considered [Officer] Jorgensen to be a person that was prowling around his house and/or committing a crime," and "when Mr. Stanley returned to [Officer] Baza's front windshield and recognized that he was inside—he should have known that Mr. Stanley likely considered [Officer] Baza an accomplice to [Officer] Jorgensen." *See* Dkt. No. 46-1 at ECF 9. Although plaintiffs attempt to characterize Mr. Clark's opinion as one regarding what a reasonable officer should have inferred from Mr. Stanley's actions, (*see* Dkt. No. 54 at 2), the fact remains that Mr. Clark's opinion is based on assumptions, without any foundation, about Mr. Stanley's state of mind. Plaintiffs have presented nothing to the Court demonstrating that Mr. Clark is qualified "by

knowledge, skill, experience, training, or education" to offer opinions on the state of mind of Mr. Stanley, Officer Baza, or anyone else.

Accordingly, defendants' motion to exclude Officer Clark's opinions on the state of mind or intentions of others is granted. *See, e.g., Johnson v. City of San Jose*, No. 5:21-cv-01849-BLF, 2023 WL 8852489, at *3 (N.D. Cal. Dec. 21, 2023) ("Mr. Clark's opinions on the credibility, intentions, or state of mind of Officer Adgar or another individual, . . . are likewise inadmissible, as Mr. Clark is not offered as a witness with relevant expertise to make such determinations and those opinions are pure speculation."); *Lanard Toys Ltd. v. Anker Play Prods., LLC*, No. CV 19-4350, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind.") (citation and internal quotation marks omitted) (collecting cases). However, the Court is prepared to allow Mr. Clark to testify about whether Officer Baza's actions comport with professional standards, and to offer opinions based on proper hypothetical questions. *See Johnson*, 2023 WL 8852489 at *3.

*Second*, defendants move to exclude Mr. Clark's testimony on the ground that his opinions are impermissible legal conclusions. For example, defendants contend that Mr. Clark's opinion that Officer Baza "shot himself out of" a dangerous situation that Officer Baza created "is tantamount to telling the jury that Officer Baza's negligence is the reason Mr. Stanley was shot." *See* Dkt. No. 51 at 4; *see also* Dkt. No. 46-1 at ECF 9. An expert's opinions may be based "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, *see* Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Additionally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, "[c]onsistent with Rule 704(a)," the Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, [w]hen an expert undertakes to tell the jury what result to reach, this does not aid

the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Id*. (internal quotations and citation omitted).

Mr. Clark may not testify or offer opinions regarding ultimate issues of law, including whether Officer Baza was negligent or "shot himself out of the situation," (which the Court additionally agrees is an inflammatory characterization by Mr. Clark). However, to the extent his testimony is based on his experience regarding standards of police practice, Mr. Clark may testify regarding whether "[o]fficers are taught on this exact scenario and how to avoid it by alerting a person to police presence and coming out of cover in these situations for the safety of the officer and suspect." *See* Dkt. No. 46-1 at ECF 8-9. On cross-examination, defendants may probe the basis for any such opinion, including whether Mr. Clark's opinion is untethered to any actual standard, policy, practice, or training.

*Third*, defendants move to exclude Mr. Clark's opinion that "Officer Baza and his colleagues never got approval from their supervisors for their surveillance actions" and "had they waited for their fellow members, supervisor input and strategized the shooting of [Mr.] Stanley would have been avoided." *See* Dkt. No. 51 at 4; Dkt. No. 46-1 at ECF 10. Defendants note that the Court's summary judgment order states that with respect to the alleged flawed formulation or execution of the CRU operational plan, plaintiffs "presented no evidence or authority that any of the alleged acts or omissions of Officer Lopez or Sergeant Johnston properly are attributable to Officer Baza," and also "presented no evidence or authority establishing that Officer Baza had a duty to inquire whether Sergeant Johnston approved Officer Lopez's decision to begin reconnaissance, or to refuse to conduct reconnaissance as directed unless Sergeant Johnston was physically present." *See* Dkt. No. 47 at 17. Plaintiffs offered no argument in opposition to this portion of defendants' motion to exclude Mr. Clark's testimony. *See* Dkt. No. 54 at 2-3. Additionally, the Court agrees that Mr. Clark may not opine on theories of negligence that the Court rejected on summary judgment and which do not remain in the case post-summary judgment. *See* Dkt. No. 47 at 17.

Accordingly, the Court grants defendants' motion to exclude testimony from Mr. Clark being offered to the effect that "Officer Baza and his colleagues never got approval from their

supervisors for their surveillance actions" and "had they waited for their fellow members, supervisor input and strategized the shooting of [Mr.] Stanley would have been avoided."

### B. Motion in Limine No. 2 to Preclude Argument about Matters the Court has Determined Cannot Give Rise to Liability

Defendants move for an order precluding plaintiffs from offering any testimony, questioning, or argument about matters that defendants say the Court has already determined cannot give rise to liability. Specifically, defendants move to preclude plaintiffs from suggesting that (1) Officer Jorgensen did not identify himself as a police officer to Mr. Stanley, and therefore acted unreasonably, and (2) the CRU operational plan was flawed in its formulation or execution. Defendants point out that Officer Jorgensen was dismissed from this action on their Rule 12 motion to dismiss, on the ground that plaintiffs did not "allege[] sufficient facts connecting Officer Jorgensen's conduct to the ultimate use of deadly force by *Officer Baza*." Dkt. No. 29 at 15-16. Additionally, defendants note that on summary judgment, the Court stated that "Officer Lopez and Sergeant Johnston are not defendants in this matter," plaintiffs "have presented no evidence or authority that any of the alleged acts or omissions of Officer Lopez or Sergeant Johnston properly are attributable to Officer Baza," and "[t]o the extent plaintiffs' negligence claim is premised on the alleged flawed formulation or execution of the operational plan, plaintiffs have not shown that there is a triable issue or any evidence that would permit a reasonable jury to find in their favor." Dkt. No. 47 at 17. Defendants maintain that permitting plaintiffs to argue or suggest to the jury that Officer Jorgensen acted unreasonably or that the CRU plan was flawed would violate the doctrine of law of the case. *See generally United States v. Jingles*, 702 F.3d 494, 499-500 (9th Cir. 2012) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.") (internal quotations and citations omitted); *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (internal quotations and citation omitted). Additionally, defendants

argue that permitting plaintiffs to present such theories would be unfairly prejudicial, risk confusing the jury, and waste time. *See* Fed. R. Evid. 402, 403.

The Court reserves judgment on this matter, pending presentation of evidence at trial, but offers the following general guidance to the parties: To the extent plaintiffs seek to present *facts* regarding what Officer Jorgensen did or did not do, or *facts* about the operational plan, the Court is prepared to permit them to do so. However, plaintiffs' theory of the case (post-summary judgment) is not based on the allegedly flawed operational plan or anything Officer Jorgensen did or did not do; rather, their theory is that Officer Baza should have come out of cover during the reconnaissance. Plaintiffs therefore are not permitted to argue or suggest that the CRU operational plan was flawed, or that Officer Jorgensen acted negligently, or that the plan's alleged flaws or Officer Jorgensen's alleged negligence somehow made Officer Baza's conduct negligent.

**IT IS SO ORDERED.**

Dated: January 20, 2024

Virginia K. DeMarchi
United States Magistrate Judge