UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE ESTATE OF DEMETRIUS STANLEY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF SAN JOSE, et al.,<br><br>  Defendants. | Case No. 22-cv-03000-VKD<br><br>**PRETRIAL ORDER NO. 1** |

The Court held a final pretrial conference on January 17, 2024, and now orders as follows:

**1.      Issues to Be Decided at Trial**

The issues that remain for trial are (1) whether defendant Officer Anthony Baza's use of deadly force constitutes negligence/wrongful death; (2) whether Officer Baza's use of deadly force constitutes battery; and (3) what amount of damages should be awarded to plaintiffs for any of the above-listed violations that are established.[1]  Below, the Court addresses several matters discussed at the pretrial conference.

*First*, defendants contend that the fifth claim for relief for negligence/wrongful death is asserted only on behalf of Mr. Stanley's estate, and not by Ms. Lebreton individually, because that claim is titled as one by "Plaintiff Estate of Stanley" against the defendants.  *See* Dkt. No. 1 at 13.  The complaint's caption indicates that Ms. Lebreton filed this suit as the personal representative of Mr. Stanley's estate, as well as in her individual capacity on her own behalf.  Notwithstanding the

---

[1] The Court granted, as unopposed, defendants' motion for summary judgment on plaintiffs' claims for violation of the Fourth and Fourteenth Amendments, as well as the California Bane Act. *See* Dkt. No. 47 at 2; *see also* Dkt. No. 39 at 8 n.1.

1   way the negligence/wrongful death claim is titled, the substance of that claim seeks damages for
2   the alleged breach of a duty of care owed to both "Plaintiff and Decedent."  Accordingly, the
3   complaint is sufficiently pled to put defendants on notice that the claim for negligence/wrongful
4   death is brought by Ms. Lebreton for herself and on behalf of Mr. Stanley's estate.  Defendants
5   have not demonstrated any prejudice.  The Court will permit plaintiffs to proceed as such with
6   respect to the negligence/wrongful death claim.

7   *Second*, with respect to the theories to be presented at trial, the Court asked for clarification
8   regarding the parties' statement of "Disputed Facts"—specifically, the notation in the joint pretrial
9   statement that the disputed facts include "[w]hether Defendant Baza should have simply drove
10  [sic] away rather than shooting [Mr.] Stanley."  *See* Dkt. No. 55, sec. E., No. 3.  The Court noted
11  its understanding that the theory to be tried is whether it was unreasonable for Officer Baza not to
12  come out of cover at some point before shooting Mr. Stanley.  Plaintiffs explained that they intend
13  to argue only that Officer Baza should have used or moved his car to help identify himself as a
14  police officer.  As discussed at the pretrial conference, the Court interprets plaintiffs' statement as
15  a modification of the joint pretrial statement and understands that plaintiffs do not intend to argue
16  or suggest that Officer Baza "should have simply [driven] away rather than shoot[] Mr. Stanley."

17  *Third*, with respect to affirmative defenses, for the first time in the parties' joint pretrial
18  statement, defendants assert a comparative negligence defense.  *See* Dkt. No. 55 at 2.  As noted in
19  the Court's summary judgment order (Dkt. No. 47), defendants did not file an answer to the
20  complaint.  *See* Dkt. No. 47 at 18-19.  Nonetheless, the Court finds that plaintiffs have not been
21  prejudiced by defendants' failure to formally plead a comparative negligence defense.  Indeed, at
22  the pretrial conference, plaintiffs' counsel acknowledged that plaintiffs understood that
23  comparative negligence has been a part of the case, and confirmed that they do not object to the
24  assertion of such a defense at trial.  Accordingly, the trial will proceed with a comparative
25  negligence defense, as between Officer Baza and Mr. Stanley, and no one else.

26  *Fourth*, for the first time in the parties' joint pretrial statement, defendants assert a defense
27  based on California Government Code § 818, which pertains to punitive damages.  Although
28  plaintiffs' complaint included a request for punitive damages (*see* Dkt. No. 1 at 14), the parties'

joint pretrial statement indicates that plaintiffs do not seek such damages at trial. *See* Dkt. No. 55 at 2 ("Plaintiff Mimi Lebreton seeks noneconomic damages for the past and future loss of Decedent Demetrius Stanley's love, companionship, comfort, care, assistance, affection, society, and moral support."). At the pretrial conference, plaintiffs confirmed that they are not seeking punitive damages. Dkt. No. 56. Accordingly, defendants' proposed defense based on California Government Code § 818 is moot.

*Fifth*, defendants renew their assertion that Officer Baza is entitled to immunity under California Government Code § 820.2 for his decision to remain under cover. As discussed at the pretrial conference, the Court understands that defendants seek a ruling, as a matter of law, that § 820.2 immunity applies to Officer Baza's decision to remain under cover.

Section 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. While it may be difficult to draw the line between immune discretionary decisions and unprotected acts, *see Johnson v. State of California*, 69 Cal.2d 782, 793 (1968), as explained by the Ninth Circuit and the California Supreme Court:

> [A] "workable definition" of immune discretionary acts draws the line between "planning" and "operational" functions of government. Immunity is reserved for those "*basic policy decisions* which have been expressly committed to coordinate branches of government," and as to which judicial interference would thus be "unseemly." Such "areas of quasi-legislative policymaking are sufficiently sensitive" to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process[.]"

*Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1161 (9th Cir. 2019) (quoting *Caldwell v. Montoya*, 10 Cal.4th 972, 981 (1995)); *see also Johnson*, 69 Cal.2d at 793 ("Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for [b]asic policy decisions has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government."). This "approach possesses the dispositive virtue of concentrating on the

reasons for granting immunity to the governmental entity," and "requires [courts] to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision." *Johnson*, 69 Cal.2d at 794. Additionally, the California Supreme Court has cautioned that "courts should not casually decree governmental immunity; through a literal interpretation of 'discretionary' or otherwise, section 820.2 should not be made a catchall section broadly encompassing every judgment exercised at every level." *Id.* at 798 (internal quotations and citation omitted); *see also Barner v. Leeds*, 24 Cal.4th 676, 685 (2000) ("On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated. The scope of the discretionary act immunity should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.") (internal quotations and citations omitted).

Applying that framework to the present case, and based on the nature of the alleged conduct and the undisputed facts regarding that conduct, the Court finds that while the decision to conduct the covert reconnaissance of Mr. Stanley's residence may be the kind of discretionary decision that falls within § 820.2 immunity, the manner in which the reconnaissance was carried out is not protected by discretionary immunity. Other cases, including those primarily relied upon by defendants, are not inconsistent with the Court's conclusion. They illustrate that immune discretionary decisions involve "an *actual* exercise of discretion, i.e., a conscious balancing of risks and advantages," *Steinle*, 919 F.3d at 1161, and that once a public employee undertakes to perform an act that the employee is permitted to perform, that employee is not immune from liability for injuries resulting from the negligent performance of duties that do not constitute a policy or planning decision. *See McCorkle v. City of Los Angeles*, 70 Cal.2d 252 (1969) (§ 820.2 immunity does not apply to officer's negligent conduct of traffic investigation, once undertaken); *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005 (2014) (applying § 820.2 immunity "to the selection of the means used to effectuate an arrest," namely the considered decision to use tear gas); *Bratt v. City & Cnty. of San Francisco*, 50 Cal. App. 3d 550 (1975) (applying § 820.2 to officers' decision to engage in vehicle pursuit, and there was no allegation that officers conducted

4

the pursuit in a negligent manner).

### 2.     Bifurcation of Liability Issues and Damages

Although no party formally requested bifurcation of liability and damages, the Court raised the question at the pretrial conference. Defendants indicated that they wish trial to be bifurcated with regard to issues of liability and damages; plaintiffs conditioned their position regarding bifurcation on the Court's ruling on their motions in limine.

Having considered the evidence proposed to be presented for purposes of liability and/or damages, and the parties' respective positions, the Court concludes that trial should be bifurcated regarding liability issues and damages. The Court has broad discretion under Rule 42 to bifurcate trial of one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ("Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings[.]") (internal quotations and citation omitted). As discussed below, some proposed evidence is relevant only to damages, and is irrelevant and potentially prejudicial with respect to liability. It is not apparent that bifurcation raises any serious efficiency concerns, as the same jury that decides liability and entitlement to damages will also decide the amount of damages, if necessary.

Accordingly, if, in the first phase of trial, the jury finds in favor of plaintiffs on liability issues and finds that they are entitled to damages, trial will immediately proceed to a second phase in which the same jury will consider the amount of damages to award.

### 3.     Neutral Statement of the Case

The Court will read to the jury the parties' proposed neutral statement of the case, without modification.

### 4.     Objections to Trial Witnesses

For the reasons stated on the record during the pretrial conference, the Court resolves the parties' respective objections and other matters regarding trial witnesses as follows:

### a. Plaintiffs' proposed witnesses

#### i. Mimi Lebreton

Defendants did not object to Ms. Lebreton as a witness, in part, because they anticipate that she will testify regarding damages. With respect to the liability phase of trial, as discussed at the pretrial conference, defendants do not object to Ms. Lebreton testifying, briefly by way of introductory remarks, about basic factual information, e.g., identifying herself and her relationship to Mr. Stanley.

#### ii. Kevin Stanley, Nia Stanley, and Sam Gulley

Defendants' objection to each of these witnesses rests, in part, on the ground that plaintiffs did not disclose them in their Rule 26(a) initial disclosures. *See* Dkt. No. 55-1 at 3. At the pretrial conference, plaintiffs stipulated that they will not call Kevin Stanley and Sam Gulley to testify at trial. With respect to Nia Stanley, plaintiffs acknowledged that they did not disclose her in their Rule 26(a) initial disclosures, and that no discovery had been taken with respect to her. Generally, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiffs have not explained why their failure to disclose Ms. Stanley was substantially justified or harmless. Accordingly, plaintiffs may not call Ms. Stanley to testify at trial.

#### iii. Roger Clark

Defendants' objections to the proposed testimony and opinions of Mr. Clark are addressed in the Court's separate order on defendants' motions in limine.[2]

---

[2] The Court's August 23, 2022 case management order set an October 31, 2023 deadline for a hearing on dispositive and *Daubert* motions. Dkt. No. 19. Because defendants' motion to exclude Mr. Clark's testimony challenges his qualifications and the reliability of his opinions, defendants should have filed their motion no later than September 26, 2023. *See* Civil L.R. 7-2(a). This is not the first time that the City Attorney's Office has not complied with this Court's dispositive/*Daubert* motion deadline, and has filed a tardy motion to exclude an expert's testimony, as a motion in limine, months after the filing deadline. *See Berry v. Parodi*, Case No. 5:21-cv-08436-VKD, Dkt. Nos. 23, 65, 72 at 1 n.3. The Court would otherwise strike the defendants' motion as untimely, but is compelled to consider their belated submission given the

6

### iv. Michelle A. Jorden, M.D.

Dr. Jorden is the Santa Clara County Medical Examiner. Plaintiffs propose to call her during the liability phase of trial to testify about "the manner and cause of [Mr.] Stanley's death." Dkt. No. 55-1 at 3. However, a medical examiner's testimony regarding the manner and cause of Mr. Stanley's death is not relevant to any claim or defense, nor would it be helpful to the jury in understanding other evidence. The manner and cause of Mr. Stanley's death are not disputed: Officer Baza fired his rifle, striking Mr. Stanley twice and killing him. *See* Dkt. No. 55 at 3. These facts will be the subject of evidence presented by other witnesses, including Officer Baza. Plaintiffs have provided no justification for the admission of testimony by a medical professional concerning a scientific or medically precise explanation of Mr. Stanley's injuries or the cause of his death. Accordingly, plaintiffs may not present testimony from Dr. Jorden for that purpose. Fed. R. Evid. 402, 403.

The Court reserves judgment regarding whether plaintiffs may call Dr. Jorden to testify regarding damages, e.g., the state of Mr. Stanley's health at the time of his death.

### v. City Custodian of Records

The parties "stipulate to the authenticity of documents the City of San Jose produced in litigation." *See* Dkt. No. 55 at 8. At the pretrial conference, plaintiffs agreed that they will not call a custodian of records to testify at trial.

### vi. Officer Lopez

Defendants do not assert specific objections to Officer Lopez. Plaintiffs will be permitted to call Officer Lopez to testify, subject to the Court's rulings in its separate order on defendants' motions in limine.

---

Court's "basic gatekeeping obligation" to "'ensure that any and all scientific testimony . . . is not only relevant, but reliable,'" particularly in view of the fact that plaintiffs intend to present expert testimony to a jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). If the City Attorney's Office continues to disregard the Court's ordered dispositive/*Daubert* motion deadline in future cases, the Court will consider whether sanctions are appropriate. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (internal quotations and citation omitted).

7

       **vii.**  **Sergeant Mark Johnston**

Defendants do not assert specific objections to Sergeant Johnston. Plaintiffs will be permitted to call Sergeant Johnston to testify, subject to the Court's rulings in its separate order on defendants' motions in limine.

    **b.**  **Defendants' proposed witnesses**

       **i.**  **Alvaro Lopez**

Defendants may call Officer Lopez to testify, subject to the Court's rulings in its separate order on plaintiffs' motion in limine.

       **ii.**  **Sergeant Mark Johnston**

Defendants may call Sergeant Johnston to testify, subject to the Court's rulings in its separate order on plaintiffs' motion in limine.

       **iii.**  **Detective Amanda Estantino**

For the reasons discussed in the Court's separate order on plaintiffs' motion in limine, Detective Estantino is excluded from testifying during the liability phase of trial. The Court reserves judgement on whether defendants may call Detective Estantino to testify regarding damages, in the event the trial proceeds to the damages phase.

       **iv.**  **Dr. Michelle Jorden**

With respect to liability issues, at the pretrial conference, defendants confirmed that the sole reason they seek to call Dr. Jorden is to testify about the toxicology results referenced in her autopsy report. For the reasons discussed in the Court's separate order on plaintiffs' motion in limine, defendants may not present testimony from Dr. Jorden for that purpose.

To the extent defendants may wish to call Dr. Jorden to testify regarding damages, the Court reserves judgment on whether they will be allowed to do so.

**5.**  **Objections to Proposed Exhibits**

As discussed at the pretrial conference, the parties need to attend to some administrative matters regarding their exhibits: They did not number their exhibits sequentially as required by the Court's Standing Order re Pretrial Preparation, with the result that the parties' respective exhibits have duplicate exhibit numbers. Additionally, it appears that there may be some exhibits

8

1  (as to which there is no dispute) that both parties intend to present at trial.  The parties should

2  eliminate the duplicate exhibit numbers and should also coordinate to eliminate any duplicative

3  exhibits.

4        For the reasons stated on the record during the pretrial conference, the Court resolves the

5  parties' respective objections and other matters regarding proposed exhibits as follows:

### a. Plaintiffs' proposed exhibits

#### i. Exhibit 1 - Photographs

Plaintiffs' proposed Exhibit 1 is a collection of post-incident photos of the scene of the shooting.  Defendants object to these photographs as irrelevant, cumulative, and prejudicial.  Fed. R. Evid. 402, 403.  Based on the discussion at the pretrial conference, it appears that there may be some room for agreement on photographs that plaintiffs may wish to use at trial.  Accordingly, the parties shall confer for the purpose of narrowing, and possibly stipulating to, photographs that plaintiffs may seek to use at trial.  By **January 24, 2024**, the parties shall submit a joint statement, along with any photographs as to which the parties agree and any photographs that remain in dispute.  As to any disputed photographs, the parties shall briefly state the basis for their disagreement and their respective positions.

In the event plaintiffs are permitted to use any of the photographs in their proposed Exhibit 1, under no circumstances will plaintiffs be permitted to refer to any photograph as a "crime scene" photograph, as such a description is likely to suggest to the jury that this civil trial concerns whether Officer Baza committed a crime.  Fed. R. Evid. 403.

#### ii. Exhibit 2 - Photographs

Plaintiffs' proposed Exhibit 2 is a collection of photographs of Officer Baza's service weapons and other equipment.  Defendants object to these photographs as duplicative of plaintiffs' proposed Exhibit 3.[3]  Fed. R. Evid. 403.  By **January 24, 2024**, the parties shall submit a joint

---

[3] Plaintiffs' proposed Exhibit 3 are photographs of Officers Baza and Jorgensen as they appeared at the time of the incident. At the pretrial conference, defendants clarified that they do not object to this proposed exhibit, and that their asserted hearsay objection under Fed. R. Evid. 802 is meant to be directed to plaintiffs' Exhibit 4 (addressed below).

9

1  statement, along with any photographs as to which the parties agree and any photographs that
2  remain in dispute.  As to disputed photographs, the parties shall briefly state the basis for their
3  disagreement and their respective positions.

### iii.     Exhibit 4 – Audio recording

Plaintiffs' proposed Exhibit 4 is an audio recording of an interview of Officer Jorgensen.  Defendants' hearsay objection to this exhibit is sustained.  Fed. R. Evid. 802.  At the pretrial conference. plaintiffs stated that they do not plan to use this exhibit at trial, except for impeachment.  Accordingly, plaintiffs' proposed Exhibit 4 is excluded, except for impeachment purposes.[4]

### iv.     Exhibit 9 – Dr. Jorden's autopsy report

Plaintiffs' proposed Exhibit 9 is a copy of Dr. Jorden's autopsy report.  Plaintiffs may not present this report during the liability phase of trial regarding the manner and cause of Mr. Stanley's death, for the reasons discussed above with respect to Dr. Jorden's testimony.  Fed. R. Evid. 402, 403.

The Court reserves judgment regarding whether  the autopsy report may be admissible for some other purpose.

### v.     Exhibit 10 - Photographs

Plaintiffs' proposed Exhibit 10 is a collection of photographs of Mr. Stanley's autopsy.  Defendants' objections to this exhibit as irrelevant and unfairly prejudicial are sustained, including for the reasons discussed above with respect to Dr. Jorden's testimony.  Fed. R. Evid. 402, 403.  Plaintiffs' proposed Exhibit 10 is excluded.

### vi.     Exhibits 11, 12 - Photographs

Plaintiffs' proposed Exhibits 11 and 12 are photographs of Mr. Stanley and his family.  Defendants do not object to these exhibits on a wholesale basis, but object to the presentation of multiple photographs as cumulative.  Fed. R. Evid. 403.  As discussed at the pretrial conference, in

---

[4] Although plaintiffs have represented that they intend to use the audio recording of Officer Jorgensen's interview only for impeachment, the Court notes that the USB drive of plaintiffs' electronic exhibits provided to the Court does not actually contain a copy of that interview.

the liability phase of trial, it is appropriate for plaintiffs to show a photograph of Mr. Stanley as an adult. The parties shall confer for the purpose of possibly reaching an agreement on a photograph to be used during the liability phase of trial. By **January 24, 2024**, the parties shall submit a joint statement, advising whether they have reached any such agreement. To the extent there remains a dispute, the parties shall briefly state the basis for disagreement and their respective positions.

If the trial proceeds to a damages phase, the Court reserves judgment on what photographs (if any) may be presented with respect to damages.

#### vii. Exhibit 13 – Clark expert report

Plaintiffs' proposed Exhibit 13 is a copy of Mr. Clark's report. As discussed at the pretrial conference, the purpose of an expert report is to identify the expert's opinions and the bases for those opinions. Expert reports are not admissible evidence. Accordingly, plaintiffs' proposed Exhibit 13 is excluded.[5]

### b. Defendants' proposed exhibits

#### i. Exhibits 4, 6, and 7 - Warrants

Defendants' proposed Exhibit 4 is the SJPD Ramey warrant for Mr. Stanley's arrest. Their proposed Exhibit 6 is the SJPD search warrant for Mr. Stanley's home and car. Their proposed Exhibit 7 is the SJPD arrest warrant for Mr. Stanley. Plaintiffs object to all of these exhibits as irrelevant, unnecessary, and unfairly prejudicial. Fed. R. Evid. 401, 402, 403. They also contend that these exhibits lack proper foundation.

To be clear, defendants may present evidence of all of the *information* Officer Baza knew of, or was aware of, at the time of the shooting. However, that does not mean that underlying documents containing such information may be admitted into evidence, absent a showing that Officer Baza had those documents and reviewed them prior to the shooting. Accordingly, defendants' proposed Exhibits 4, 6, and 7 are excluded unless defendants are able to lay a foundation that Officer Baza had those documents and reviewed them prior to the shooting.

---

[5] To the extent plaintiffs included Mr. Clark's report on their exhibit list because they may wish to mark it for identification, the Court finds no issue.

       **ii.**  **Exhibit 5 – Detective Estantino's reports**

Defendants' proposed Exhibit 5 is a collection of Detective Amanda Estantino's reports regarding the March 2021 armed robbery involving Mr. Stanley. For the reasons discussed in the Court's separate order on plaintiffs' motion in limine, defendants' proposed Exhibit 5 is excluded with respect to the liability phase of trial. Fed. R. Evid. 401, 402, 403.

If trial proceeds to a damages phase, the Court reserves judgment on the admissibility of defendants' proposed Exhibit 5 regarding damages.

       **iii.**  **Exhibit 9 – Dr. Jorden's autopsy report**

Defendants' proposed Exhibit 9 is a copy of Dr. Jorden's autopsy report. As noted above, with respect to liability issues, the Court's understanding is that defendants wish to use the autopsy report at trial solely for the purpose of presenting the toxicology results referenced in that report. For the reasons discussed in the Court's separate order on plaintiffs' motion in limine, defendants' proposed Exhibit 9 is excluded. The Court reserves judgment on the admissibility of the autopsy report to the extent defendants seek to introduce the report for some other purpose.

       **iv.**  **Exhibit 10 – District Attorney report**

Defendants' proposed Exhibit 10 is a copy of the Santa Clara County District Attorney's post-incident report. For the reasons discussed in the Court's separate order on plaintiffs' motion in limine, this exhibit is excluded, except for impeachment.

**6.**  **List of Interested Persons**

By **January 24, 2024**, the parties shall submit one joint list of interested persons and entities. The joint list should include the names of the parties and witnesses who may or will be called at trial, the attorneys and their places of employment, and any other persons who were materially involved in working on the case. This list will be used to assist the Court and the parties in assessing whether any prospective jurors should be excused from service based on a connection with an interested person.

**7.**  **Jury Instructions and Verdict Form**

As discussed at the pretrial conference, in view of the Court's rulings on the parties' respective motions in limine and other evidentiary matters, the parties shall confer for the purpose

12

of narrowing or otherwise modifying their proposed jury instructions. They will also need to revise their respective proposed verdict forms. By **January 24, 2024** the parties shall submit to the Court their revised proposed jury instructions and verdict forms.

The Court sets a preliminary jury instruction conference for **February 1, 2024 at 3:00 p.m.,** to be held via Zoom.[6] The Court anticipates providing the parties a set of draft instructions and a draft verdict form for their review by **January 30, 2024**.

### 8. Jury Selection Process

All prospective jurors will be shown the Northern District of California's Unconscious Bias video, unless the Court sustains an objection to the video. The video is available for viewing on the Court's website at https://www.cand.uscourts.gov/attorneys/jury-video. Any objections to the showing of the video must be made at least 7 days in advance of trial.

In this district, all prospective jurors fill out a standard online questionnaire to determine whether they are legally qualified to serve as jurors. The questionnaire also asks for basic demographic and background information. A copy of the current version of the standard questionnaire may be accessed at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Updated-Standard-CAND-Trial_SurveyMonkey_10-2023.pdf.

The jury office expects to email the completed questionnaires to the Court and counsel for the parties on **January 31, 2024**. The Court will hold a hearing to determine whether any prospective jurors must be excused for hardship based on responses to the questionnaires on **February 1, 2024 at 3:00 p.m.** via Zoom.

Completed jury questionnaires shall be maintained by counsel for the parties in confidence, and must be destroyed within 10 days after the jury is excused unless the Court orders otherwise.

The Court will permit the parties to conduct only limited voir dire. Counsel must avoid voir dire questions that may be unduly intrusive on jurors' privacy and questions that seek to precondition jurors in favor or against one party or the other. For example, proposed questions concerning prospective jurors' television watching habits are unduly intrusive. Proposed

---

[6] The Court will post information regarding access to the Zoom proceeding in advance of the February 1, 2024 conference.

13

questions concerning prospective jurors' views regarding the Second Amendment are irrelevant. The only legitimate purpose of voir dire is to examine the prospective jurors for bias and partiality.

The jury will consist of 9 jurors. Each side has 3 peremptory challenges. Fed. R. Civ. P. 47; 28 U.S.C. § 1870 ("In civil cases, each party shall be entitled to three peremptory challenges.").

In advance of jury selection, the parties should review the Court's Standing Order re Juror Questionnaires and Social Media Research, https://cand.uscourts.gov/standing-order-re-juror-questionnaires-and-social-media-research/.

### 9. Jury Trial

The jury trial will be held in Courtroom 2, 5th floor, 280 South First Street, San Jose, California.[7] The jury trial will be held on the following days, unless otherwise ordered by the Court: **February 5-9, 2024.** Trial will be conducted from 9:00 a.m. to 2:00 p.m., with two fifteen-minute breaks. Counsel may need to arrive earlier or stay later to address any matters that must be heard out of the presence of the jury.

Each side will each have up to 10 minutes for voir dire.

Each side will have up to 1 hour for opening statements in the liability phase of trial, and up to 30 minutes in the damages phase of trial.

Each side will have up to 6 hours for the presentation of evidence (direct and cross-examination of witnesses), in the liability phase of trial, and up to 1 hour in the damages phase of trial.

Each side will have up to 1 hour for closing arguments in the liability phase of trial, and up to 30 minutes in the damages phase of trial.

During deliberations the jury may take lunch and breaks whenever they choose to do so. The jury may deliberate on consecutive business days.

---

[7] The parties may contact courtroom deputy Adriana Kratzmann, at vkdcrd@cand.uscourts.gov, to schedule a time to familiarize themselves with the courtroom and the courtroom technology, if they wish.

### 10. Exclusion of Witnesses, Recording, and Photographing

All fact witnesses, other than the parties themselves, are excluded from the courtroom and may not have access to a record or summary of the trial evidence until they have completed their testimony, have been excused by the Court, and are not subject to recall. Recording and photographing in the courtroom are prohibited.

### 11. Order and Timing of Witnesses/Exhibits

The parties are expected to provide each other with notice of the order and timing of witnesses to be called at trial, the exhibits to be used with each witness (other than for impeachment), and demonstratives to be used with witnesses, in opening statements and in closing arguments.[8] The parties must confer in advance of trial regarding the manner and timing of such notices so that objections may be raised with and resolved by the Court without delaying the conduct of the trial.

### 12. Trial Transcripts

Instructions on how to file a request for a transcript using Form CAND-435 are available at https://cand.uscourts.gov/about/clerks-office/transcripts-court-reporters/.

### 13. Electronic Equipment

If a party wishes to bring electronic equipment or other large items into the courthouse, the party must file a request and proposed order with the Court by **January 30, 2024**. Such equipment must be tested in the courtroom prior to trial. Arrangements may be made with Judge DeMarchi's courtroom deputy, Adriana Kratzmann, at vkdcrd@cand.uscourts.gov.

### 14. Assessment of Jury Costs

If the parties reach a settlement and fail to notify the Court and dismiss the case by **February 2, 2024 at 2:00 p.m.,** the Court will assess jury costs pursuant to Civil Local Rule 40-1. Such costs shall be evenly split between each side and will include juror fees, juror mileage

---

[8] For opening statement and closing argument, if the demonstrative, or a portion of it, merely summarizes statements counsel intends to make in the statement or argument, that demonstrative or pertinent portion of it need not be disclosed to the other party or parties, unless the parties agree otherwise.

15

reimbursement, and juror parking reimbursement.

**IT IS SO ORDERED.**

Dated: January 20, 2024

Virginia K. DeMarchi
United States Magistrate Judge